### SMITH v. DONNELLY.

(Supreme Court, Appellate Division, Second Department. April 29, 1904.)

1. LANDLORD AND TENANT—DEFECTIVE PREMISES—TENANT'S PERSONAL INJURY—LIABILITY OF LANDLORD.

A landlord is not liable for the personal injury of his tenant because he failed to give the tenant notice of the latent structural defect occasioning it, where the landlord had no actual knowledge thereof, and the defect was not apparent on reasonable inspection.

Hooker, J., dissenting.

Appeal from Trial Term.

Action by Tillie Smith, an infant, by Robert Smith, her guardian ad litem, against Eugene J. Donnelly. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

William J. Carr, for appellant.

Frederick W. Sparks, for respondent.

WOODWARD, J. The plaintiff, an infant, was injured by falling from a third-story window of a tenement house owned by the defendant, and brings this action to recover damages for such injuries; alleging negligence on the part of the defendant, in that there was a defect in the construction of the window frame, which permitted the window to fall out, carrying the plaintiff with it to the ground. The plaintiff's theory of the case, accepted by the jury, was that the plaintiff was engaged in washing windows; that she approached the window where the accident occurred, put up the lower sash, and reached up and pulled down the upper sash; that, as this upper sash came down, it flew out, because of the absence of a stile or stop, and the plaintiff, clinging to the sash, was drawn over the window sill, about 2½ feet high, and precipitated on the ground below, to her great injury. From the judgment entered upon the verdict of the jury, appeal comes to this court.

While the learned trial justice may have devoted more consideration to the plaintiff's case than was warranted, we think there was no error in granting the amendment to the complaint, without which the plaintiff would have had no standing in court. The amendment consisted of inserting "an allegation material to the case," without materially changing the cause of action alleged, and this is specially authorized by section 723 of the Code of Civil Procedure.

We are of opinion that the evidence supports the conclusion reached by the jury, and the judgment might be permitted to stand, were it not for an error in the charge of the learned trial justice, to which the defendant duly excepted. The court charged that it—

"Is the duty of the owner of property seeking to lease it to some one else, if there is any dangerous, hidden defect—a defect that is not apparent or is not

discoverable or ascertainable by ordinary and reasonable observation and inspection—to apprise the tenant of the existence of that defect, or the existence of that dangerous condition; ahd if he fails. to do so, and injury results from that defect or dangerous condition, then he is responsible. Of course, the ordinary rule of law is that a landlord renting his premises, if they are in a dangerous condition, the tenant takes the risk of that, unless there is some contract made between himself and the landlord in reference to it, or unless there is some fraud. Because, a tenant going into a house, or purposing to become a tenant, it is his business to examine the premises himself, and see the condition that they are in. The landlord rents them as they are, as they exist, as they are apparent to reasonable observation and investigation. But as I say, if there is a hidden defect or danger in it, that is not apparent and not observable by reasonable care and observation, such as a reasonably prudent man should make before going in to occupy the house with his family, and that. hidden defect, or nonapparent danger or defect, is not disclosed, then the owner of the property is responsible for any damages that ensue."

The defendant duly excepted to this charge, and asked the court to charge—

"That the tenant of real property must run the risk of its condition, and, unless he has an express agreement on the part of the landlord covering that subject, the tenant hires it at his peril, and a rule similar to that of caveat emptor applies, and throws upon the tenant the responsibility of examining as to the existence of defects in the premises, and of providing against their ill effects."

The court responded:

"I charge that, but that applies to such conditions as are apparent—to such dangers as are apparent or are discoverable or ascertainable by ordinary, reasonable observation and investigation."

Defendant excepted, and asked the court to charge that—

"Unless fraud be shown, a landlord who lets a house in a dangerous state is not liable to the tenant or his family for accidents happening during the term; that there is no law against letting a tumble-down house, and the tenant's remedy is upon his contract, if any."

To this the court replied:

"I charge that with this modification, gentlemen: That is the law except where are defects or dangers that are not apparent, or not discoverable or ascertainable by ordinary, reasonable observation and investigation, such as a reasonably prudent man, contemplating renting a house, would make."

This was excepted to by the defendant, and a further request to charge was met by a reiteration of the last-quoted modification.

It will thus be seen that this case went to the jury upon the theory that, if there was a hidden defect or danger in these premises, the defendant became absolutely liable, irrespective of the landlord's knowledge of this defect or danger, or whether he could, in the exercise of. reasonable care, have discovered the same. We think the law does not impose such a duty upon a landlord; that he is chargeable only with the exercise of reasonable care in the discovery of defects in his premises, in the absence of knowledge. The defect in this case, the jury has found, could not have been discovered by the exercise of reasonable care in inspection on the part of the tenant; and if it had been instructed that the landlord owed only the duty of disclosing secret dangers which were known to him, or which he ought to have known

in the exercise of reasonable care, the evidence would have warranted the jury in finding that the defect complained of was not such as to have been discoverable in the exercise of that care which the landlord was bound to exercise. It appeared from the evidence that the defect was outside of the window, in such a position that it was not apparent to an ordinary observer. Indeed, no one appears to have noticed it until the lowering of the upper sash of the window disclosed the fact, if it was a fact, that there was nothing to prevent it, when lowered, from swinging out into space. The evidence shows that there was a proper stop part way down, and it seems quite probable that the stop was left off on purpose to permit of taking out this upper sash for the purpose of cleaning, without the necessity of removing it; and the jury might, under proper instructions, have found that this latent defect, as shown by experience, was not one which would have attracted the attention even of an unusually careful landlord. There was no defect when the upper sash was in place; it was only apparent when the sash was lowered to the position commonly occupied by the lower sash; and the inference might properly be drawn that it was not negligent to permit this stop to remain out of place. There was a decided conflict of evidence as to whether the stop was ever out of place— whether there was, in fact, any defect—and it was of importance to the defendant, therefore, that the jury should take with them in their retirement no false impressions as to the duty of the defendant, that the evidence might be considered in its true relation to the law. This action has negligence as its basis, and there are few circumstances in which a defendant in actions of this character is called upon to exercise more than reasonable care, having regard for the dangers which were reasonably to be anticipated. It is going very close to the limit to hold that the defendant was bound to anticipate great danger from the absence of this stop, even if he knew that it was not there. There was no danger so long as the two window sashes were in their proper positions—no danger when the lower sash was out or raised up. It became dangerous only when the lower sash was raised or taken out, and when the upper sash was lowered to the position of the lower sash. To say that the defendant was bound to anticipate that, in washing these windows, the plaintiff or any one else would be dragged over a window sill 2½ feet high, is imposing a high degree of responsibility for not discovering this trifling defect in the window casing. But assuming the defendant's liability to exercise reasonable care under the circumstances disclosed by the evidence, he was entitled to have the jury understand that this duty was not absolute. In Cesar v. Karutz, 60 N. Y. 229, 231, 19 Am. Rep. 164, where the action was brought for damages growing out of a failure of the landlord to notify the intended tenant that the premises were infected with smallpox germs, the learned trial justice charged the jury "that if a landlord lets premises to a tenant, and they are infected, and he knows it, it is his duty to let the tenant know it." He further charged that unless the defendant knew, or had reasonable notice, that the premises were infected, the plaintiff could not recover. This charge was approved, and is relied upon as an authority in Daly v. Wise, 132 N. Y. 306, 311, 30 N. E. 837, 838, 16 L. R. A. 236, for the proposition that:

"In case the owner of a dwelling knows that it has secret defects and conditions rendering it unfit for a residence, and fraudulently represents to one who becomes a tenant that the defects and conditions do not exist, or if he fraudulently conceals their existence from him, the lessee, if he abandons the house for such cause, will not be liable for subsequently accruing rent."

If the landlord knew of this defect, and it was such as a reasonably prudent man would regard as dangerous to tenants, it was his duty, no doubt, to call attention to the matter. But this duty was not absolute, so as to charge him with responsibility for all results; he was merely bound not to fraudulently conceal the defect; and a mere failure to call attention to it, in a case where the defect only went to a slight structural imperfection, entirely harmless except under special conditions, not likely to recur at frequent periods, did not impose liability upon the defendant to the extent indicated in the charge. "It is not open to discussion in this state," say the court in Franklin v. Brown, 118 N. Y. 110, 113, 23 N. E. 126, 127, 6 L. R. A. 770, 16 Am. St. Rep. 744, "that a lease of real property, only, contains no implied covenant of this character, and that, in the absence of an express covenant, unless there has been fraud, deceit, or wrongdoing on the part of the landlord, the tenant is without remedy, even if the demised premises are unfit for occupation."

In the case now before us there was no allegation of any fraud in the conduct of the landlord; there was no evidence of any fraud on his part; and the charge of the learned trial court that the defendant was liable if the defect existed, and he failed to call the attention of the tenant to the defect, presents reversible error. It is true that in this case there was some evidence from which the jury might have found that the defendant's agent, a lady about 95 years of age, had had her attention called to a somewhat similar accident which occurred to a former tenant some 4 or 5 years before; and it may be that this knowledge on the part of the defendant's agent was notice to him of this defect, if the accident was really due to the same cause, which is by no means clear from the evidence. But in the absence of some evidence that this fact was fraudulently concealed from the tenant—and a motive for such concealment would be difficult to imagine, where the defect could have been repaired for a few shillings—the plaintiff has failed to establish a cause of action, and the charge of the court permitted the jury to impose a burden which the law does not sanction. Daly v. Wise, supra. This accident occurred, if at all, in 1898. It does not appear from the evidence that the accident was due to the same defect which is now urged as a basis for recovery in this action, although it is brought down to the same window; and if this old lady, acting as the agent of the defendant, having notice of this accident, and perhaps of this same defect in 1898, failed to call attention to it in April or May, 1901, it hardly seems consistent with justice that the defendant should be charged with liability for this accident, particularly under a charge which makes the duty of giving notice of the defect absolute. The judgment and order appealed from should be reversed, with costs.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur (JENKS, J., in result), except HOOKER, J., dissenting.