(45 Misc. Rep. 447.)

### SMITH v. DONNELLY.

(Supreme Court, Trial Term, Kings County. December, 1904.)

1. PERSONAL INJURY OF TENANT—DANGEROUS PREMISES—LIABILITY OF LANDLORD.

A landlord is not liable for injuries to a tenant resulting from a hidden dangerous defect in the premises unless he had actual knowledge of such defect at the time of making the lease, and failed to disclose the same.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, §§ 441–443, 629–641.]

Action for personal injuries by Tillie Smith, an infant, by her guardian, against Eugene J. Donnelly. There was a judgment for plaintiff, and defendant moves for a new trial on the minutes. Motion granted.

Frederick W. Sparks, for plaintiff.
K. C. & M. V. McDonald, for defendant.

GAYNOR, J. . This is an action against a landlord for damages
for personal injuries. The plaintiff is the daughter of the tenant.
In washing a window she pulled at the bottom of the upper sash .
to bring it down, having shoved up the lower sash. For lack of
a cleat or beading on the outside to form a groove for the upper
sash to run in, it fell outward until suspended by the cords only,
and in that way, and very naturally and easily, the plaintiff lost
her balance as she stood inside, and was thrown out of the window.
The defendant purchased the property after the building had been
on it for some years.

The case has been tried before, the plaintiff prevailing, but judg-
ment was reversed on appeal. 93 App. Div. 569, 87 N. Y. Supp.
893. The opinion there written puts the reversal on the ground
that the learned trial judge charged the jury that "it is the duty
of the owner of property seeking to lease it to some one else, if
there is any dangerous hidden defect" to notify the tenant of it,
"and if he fails to do so, and injury results from the defect or dan-
gerous condition, then he is responsible." The opinion says:

"It will thus be seen that this case went to the jury upon the theory that
if there was a hidden defect or danger in these premises the defendant be-
came absolutely liable, irrespective of the landlord's knowledge of the danger,
or whether he could, in the exercise of reasonable care, have discovered the
same. We think the law does not impose such a duty on the landlord; that
he is chargeable only with the exercise of reasonable care in the discovery
of defects in his premises in the absence of knowledge. The defect in this
case, the jury has found, could not have been discovered by the exercise of
reasonable care in inspection on the part of the tenant, and if it had been
instructed that the landlord owed only the duty of disclosing secret dangers
which were known to him, or which he ought to have known in the exercise
of reasonable care, the evidence would have warranted the jury in finding that
the defect complained of was not such as to have been discoverable in the ex-
ercise of that care which the landlord was bound to exercise."

Really, could any trial judge ever have instructed a jury that a
landlord is liable for not notifying his tenant of a hidden dangerous
defect even though he did not know of it himself? If he is liable
for the defect itself, how could the fact of not notifying the tenant
have anything to do with the case? And this is what the learned
and able lawyer and judge who tried this case the first time is said
to have instructed the jury.

But reference to the appeal book shows that from the beginning
to the end, from the amendment of the complaint at the opening
to the retiring of the jury at the close, the case was tried on the
single theory, stated by the learned trial judge himself in amend-
ing the complaint, and also stated in the amendment drawn by him
and read aloud, that it was essential that the landlord knew of the
defect; that he had been actually notified of it by a previous ten-
ant, but failed to notify the new tenant (the plaintiff's father) of
it; that the attorney for the plaintiff advanced no other rule of
liability; and that the major part and the gravamen of the judge's
charge was on the question whether the landlord had been notified

of the defect. If, indeed, the judge instructed the jury that the defendant was liable for not disclosing the defect to the tenant, whether he knew of it or not (and the proposition can scarcely be stated with gravity), why did he so carefully and fully charge on the question of fact whether the defendant had knowledge of the defect? And why was time spent in taking evidence on that head? What mattered whether the defendant knew of the defect or not if he was liable anyhow?

But of course the case was sent to the jury on no such theory. The judge upon stating that if the defendant failed to disclose the defect he was liable, proceeded at once to the question of fact whether he knew of the defect (for he could not disclose it unless he knew of it, as trial judges and even jurymen know), and left that controlling question to the jury. He never so much as intimated that the defendant was liable whether he had knowledge of the defect or not, and nothing occurred during the entire trial to give the jury any such notion. And the learned counsel for the defendant had no such notion, as the exceptions he took to the charge show. The case was tried on a theory that excluded it, and the judge followed the course of the trial and the summing up of counsel in his charge, as we all do. If he instructed the jury as the learned opinion written in the Appellate Division says, then he instructed them to find for the plaintiff if the defect existed, for nothing was left except to assess the damages. The charge as a whole shows that no such notion was in the mind of the judge or of anyone else. The isolated passage on which the reversal is placed is not to be interpreted alone, but in the setting and society of the whole charge, and of the whole trial also. To adopt a contrary course is often to hold the trial judge up to ridicule.

But this was not the only embarrassment of the second trial. As shown above, the learned opinion delivered on appeal declares the rule to be that the landlord is liable for not disclosing a hidden defect known to him, "or which he ought to have known in the exercise of reasonable care." The learned trial judge who presided at the first trial did not so charge. On the contrary, he put the case to the jury on the rule that actual knowledge was necessary. Later on than the clause quoted above the learned opinion seems to obscurely intimate the rule of the landlord's liability to be "fraudulent concealment" of a defect, which of course has to rest on knowledge of the defect by him. Obviously, both propositions could not be charged, for they are contradictory. A trial judge cannot blow both hot and cold in stating the law for the guidance of the jury. Not feeling at liberty to disregard the explicit language in which the rule was stated and reiterated in the learned opinion, that the landlord was liable if in the exercise of reasonable care he would have known of the defect, I so charged the jury. But this was erroneous, and it seems to me that it is my duty not to adhere to it. The liability of a landlord in a case like this can be based only on his failure to disclose to the tenant a hidden dangerous defect of which he had actual knowledge at the time of making the lease. He is not obliged to examine the premises for such de-

fects. No case so holds, and the tenor of all of the cases is to the contrary. Jaffe v. Harteau, 56 N. Y. 398, 15 Am. Rep. 438; Cesar v. Karutz, 60 N. Y. 229, 19 Am. Rep. 164; Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744; Daly v. Wise, 132 N. Y. 306, 30 N. E. 837, 16 L. R. A. 236; Steefel v. Rothschild, 179 N. Y. 273, 72 N. E. 112.

I take this course, because it does not seem possible that the learned court on appeal meant to declare all in the opinion there given to be law. One judge refused to concur in any of it. Nothing but the bare act of reversal, though based on an isolated passage in the charge, is binding. Judges have been admonished in recent years by our highest court not to accept expressions in opinions as binding, but only the actual point decided by the court itself. Colonial T. Co. v. Kingston R. Co., 154 N. Y. 495, 48 N. E. 900; Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274. Did the court (for a further example) mean to declare that because the defendant's agent of the building was 95 years old, the notice to her of the defect was less effectual or binding in law on the defendant than if a younger person had been agent, as the opinion seems to say at the end? Was the trial judge expected to charge that also (for the opinion was written for his guidance)? Or is it not the law, rather, that if one chooses to appoint an agent as old as Methuselah, he is as much bound by notice to him as though he were in the prime of life?

The motion for a new trial is granted.