### FLOYD-JONES v. SCHAAN.

(Supreme Court, Appellate Term. March 10, 1908.)

LANDLORD AND TENANT—ENJOYMENT OF PREMISES—INTERFERENCE BY STRANGER —EFFECT.

Real Property Law, Laws 1896, p. 589, c. 547, § 197, permitting a tenant to surrender leased premises without further liability where the building is destroyed or injured by any cause so as to be untenantable, does not make interference with tenant's enjoyment of premises caused by the

operation of an adjacent electric light plant, without the landlord's fault, a defense to a claim for rent accruing after the tenant's vacation of the premises because of such interference.

Gildersleeve, P. J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Twelfth District.

Action by Edward P. Floyd-Jones against Esther Schaan. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and Mac-LEAN, JJ.

Frayer, Stotesbury & Gregg (Louis W. Stotesbury, of counsel), for appellant.

Shiland, Shoemaker & Hedges (Adleigh Pelham, of counsel), for respondent.

BISCHOFF, J. In my opinion, no defense was presented to the landlord's claim for rent. The interference with the tenant's enjoyment of the demised premises by the operation of the adjacent electric light plant was an injury to the possession, of a temporary and preventible nature, caused neither by the landlord nor by any person in privity with him, and redressible at the instance of the tenant. Bly v. Edison El. Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500. As I construe the statute (section 197 of the Real Property Law, Laws 1896, p. 589, c. 547), it has reference only to cases of actual physical destruction or injury to the demised premises, and of a permanent nature. A lease of real property would certainly be of precarious duration if the tenant were at liberty to cancel it, and abandon the demised premises, because of an interference with his possession by the preventible act of a stranger to the lease. The provisions of this section of the real property law have indeed been given a construction which would extend them to cases of untenantability due to causes not necessarily sudden, nor traced to the action of the elements (Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716); but no case has gone so far as to hold that where the untenantable condition of the premises is not of a permanent character, and is caused by an act of a stranger which the tenant has the exclusive right to cause to be restrained, the tenancy may none the less be terminated. Certainly, such a situation does not appear to be within the reasonable meaning of this statute, which, it may be noted, is in derogation of the common law and to be strictly construed (Tallman v. Murphy, 120 N. Y. 355, 24 N. E. 716); and to extend the statute to this case would be to give it a violent and unreasonable interpretation not called for by authority as yet announced.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

MacLEAN, J. (concurring in reversal). Under section 197 of the real property law, permitting a tenant to surrender leased premises without further liability "where the building * * * is destroyed or so injured by the elements or any other cause as to be untenantable," the defendant, in this action for rent under a lease, alleged that she

had surrendered her apartment because it had become untenantable by the noise and vibration occasioned by the operation of machinery installed, after the beginning of her term, upon the adjoining premises of a stranger. To uphold this defense and the judgment requires, in effect, eliminating the words "by the elements or any other cause," or reducing them to "any cause," and treating the words left out as surplusage, instead of significant examples of the "alone" class in the contemplation of the Legislature—the class within which must be any cause other than the elements, namely, earth and air, fire and water— i. e., natural causes. The purview of the statute has been stretched, even in the court of last resort, to cover cases not within the recognized rule ejusdem generis, as runs the phrase. In each of those cases, however, there will be found some imputation of blameableness to the landlord. Even in Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716, there is more than a suggestion that the noises and the explosions, likened by the man who had lived in California and knew of earthshocks, to the noise and vibration of an earthquake, proceeded from a nuisance created by the landlord who retained charge and control over everything common to the whole building. "Hard cases make bad law," is an adage. Herein is no excuse for bending principle to meet a situation of hardship. The plaintiff's situation in this case is exceptional; the defendant has testified her landlord did everything he could to make her apartment desirable.

The judgment should be reversed.

GILDERSLEEVE, P. J. (dissenting). I cannot agree with the conclusion reached by my associates. This action was brought to recover rent due under a written lease. The defendant vacated the premises before the rent sued for became payable. The original answer alleged a surrender and acceptance. Upon the trial the defendant was permitted to amend her answer "so as to set up that the premises became untenantable under section 197 of the real property law." The defendant assumed the affirmative, and showed by admissions of the plaintiff and his agents, as well as by her own testimony, that the operation of an electric light plant upon adjoining premises, for which the plaintiff was in no way responsible, caused the premises of the plaintiff, occupied by the defendant, to vibrate so that a vase was thrown to the floor, the pipes, chandeliers, and dishes shook and rattled, tenants were unable to sleep on account of the loud and continuous noise, and large cracks appeared in the ceilings in various rooms. It appears that the plaintiff and his agent, in an action against the Electric Lighting Company for injunctive relief, stated under oath that it was impossible for persons to live and abide in said leased premises with any comfort or enjoyment, and that said premises were untenantable, useless, and unfit for occupancy. The facts are practically undisputed. In submitting the case to the jury the learned trial justice said:

"It is for you to determine, upon all the evidence, whether or not she was justified in moving out, by reason of an eviction, brought about by these noises which constituted a nuisance in the operation of the electric plant next door. Now, that is all there is to this case."

The jury returned a verdict for the defendant, and the plaintiff appeals. The question presented on this appeal is one of law solely. It is this: Does section 197 of the real property law cover the case, and relieve the tenant from liability for rent after vacating the premises? I think it does, and that the judgment should be affirmed. The section referred to is as follows:

"Sec. 197. When Tenant may Surrender Premises. Where the building, which is leased or occupied, is destroyed or so injured by the elements or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

The above provision is the same as we find in the Laws of 1860, p. 592, c. 345, and the decisions under that statute are applicable here. The questions of fact were properly submitted to the jury. In May v. Gillis, 169 N. Y. 330, 62 N. E. 385, the court said:

"In an action against the lessee to recover the rent, conflicting evidence (1) as to whether the injury was of such a character as to render the premises untenantable, and (2) as to whether the defendant did in fact surrender them in consequence of their having been untenantable, presents questions of fact which should be submitted to the jury."

It seems to me that it appears from the record that the premises in question were injured, without any fault or neglect on the part of the defendant, by the operation of the electric light plant; and that the injury was of the character contemplated by the statute; that the premises were rendered thereby untenantable and unfit for occupancy, and that the verdict, therefore, is amply supported by the evidence. The defendant testified that the power house was not as large when she moved in as it was after she was there a while; that they built an addition, and the noise became more and more until it was unbearable.

In Meserole v. Hoyt, 161 N. Y. 59, 55 N. E. 274, it appeared that after heavy rainstorms water entered the cellar through the walls and foundation of the leased premises, that the cellar was damp, and this condition produced sickness among the inmates of the house. In an action for rent the defendant set up the statute permitting a surrender. The jury were instructed that if the premises became untenantable, or unfit for occupation, the tenant had the right to abandon the premises without liability for further rent. The verdict was for the defendant. When the case reached the Court of Appeals, in passing upon the question as to the applicability of the real property law, the learned court said:

"It appears that this statute [section 197 of the real property law] was the basis of the ruling at the trial, and of the charge under which the case was sent to the jury. The statute does not apply to a case where the defect existed when the lease was made and no fraud or misrepresentation is shown on the part of the landlord, or when it results from the neglect of the tenant to make ordinary repairs, or from deterioration due to the ordinary use by the tenant. Suydam v. Jackson, 54 N. Y. 450; Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744; Daly v. Wise, 132 N. Y. 306, 30 N. E. 837, 16 L. R. A. 236. But it does apply in a case where it ap-

pears that by the action of the elements, or other cause occurring during the demised term, the premises become untenantable or unfit for occupancy. Scully v. Schmitt, 147 N. Y. 248, 41 N. E. 514, 49 Am. St. Rep. 659; Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716; Vann v. Rouse, 94 N. Y. 401. Whether this condition was produced by 'the elements or any other cause' within the meaning of the statute depended upon an inquiry of fact which must be deemed to be conclusively determined in favor of the defendant by the verdict of the jury and the unanimous affirmance of the judgment by the court below." Meserole v. Hoyt, Adm. of Sinn, 161 N. Y. 59, 61, 62, 55 N. E. 274, 275.

Where the statute in question does not apply, we agree with the appellant's contention that no acts will constitute an eviction unless the landlord is responsible therefor, and that the acts of strangers cannot in any sense be regarded as a breach of the covenant of quiet enjoyment on the part of the landlord. The words "any other cause," when given their usually accepted import, are broad and far-reaching, and it is difficult to see, when full significance must be given to them, how any cause can be excluded that renders the premises unfit for occupancy. The object of the statute under consideration seems to be to give the tenant relief from a situation where leased premises are injured by acts of others than the landlord. The sole question here is the right of the tenant to vacate the premises because of their untenantability. In Tallman v. Murphy, supra, it is said:

"It will be observed that the statute does not require that the building should be unsafe or dangerous, but that it should be unfit for occupancy as a result of injury. It puts upon the landlord the risk of having the premises unfit for occupancy."

We do not understand that the appellant seriously contends that the statute does not apply in cases of physical injury to the realty, but asserts that the evidence in the case at bar does not show any physical injury. It certainly appears from the evidence that the vibration was such that when the hand was placed upon the walls the sensation of an electric battery was produced; that there was a constant shaking, vibration, trembling, and pulsation of the building which caused cracks to appear therein, as well as results heretofore mentioned. We think that all this must be said to constitute a physical injury to the building that not only rendered it unfit for occupancy, but warrants the inference that its destruction by reason of the operation of the electric plant was threatened, and its occupancy unsafe. Moreover, we think the evidence calls for the conclusion that the interferences were permanent in character. While it is true, as claimed by the appellant, that defendant has a cause of action against the electric light company for injury to her possession, and may recover damages for depreciation in the usable value of the apartment during her period of occupation, it is also true that plaintiff, the owner of the fee, may maintain an action for injunctive relief, and, incidentally, damages to the fee and rental value, not collectible by the tenant. In fact, it appears from the proof, to which attention has already been directed, that an action was pending by the plaintiff against the electric light company, at the time of the trial, for injunctive relief. Should the defendant be ultimately successful in maintaining the defense here urged, and be relieved from the payment of rent before the trial of the action just mentioned, brought by appellant, would not the loss of rent resulting from the

maintenance of defendant's defense be an element of damage recoverable in such action? I think it would. The record discloses no reason for disturbing the judgment.

The judgment should be affirmed, with costs to the respondent.